| | |
|---|---|
| CHARLES EDWARD PHILSON,<br>    Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>    Respondent. | )<br>)<br>)<br>)    <u>O R D E R</u><br>)<br>)<br>) |

This matter is before the court on the Government's Motion to Dismiss [DE-61] Charles Edward Philson's ("Philson") "Motion to Vacate, Set Aside or Correct his Sentence," pursuant to 28 U.S.C. § 2255. Philson has filed a Traverse [DE-73] thereto to which the Government filed a Reply [DE-76]. Philson filed a document he titled, "Surrebuttal" [DE-77] on February 16, 2010. The matter is ripe for disposition.

Philson initially filed his § 2255 motion on September 24, 2008 [DE-55]. However, because that motion failed to conform to Clerk's filing requirements, Philson re-filed his petition on the conforming revised forms on October 7, 2008 [DE-58]. The motion was deemed to have been filed on September 24, 2008, and is designated herein as "[DE-55/57]."

**FACTUAL BACKGROUND**

Philson was charged on July 27, 2005, in a three-count Indictment [DE-12] alleging in Count One that he knowingly possessed firearms in and affecting commerce after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(2) and § 924 ("felon in possession of firearm"); in Count Two with possessing a sawed-off shotgun with an obliterated serial number not registered to him in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871; and in Count Three with possessing firearms with obliterated

serial numbers, in violation of 18 U.S.C. § 922(k) and § 924. On Philson's motion, the court conducted a suppression hearing resulting in the suppression of three of the five firearms listed in the Indictment. *See* [DE-24]. The court allowed the Government's motion to dismiss Counts Two and Three. *See* [DE-34]. Philson exercised his right to trial as to Count One, and he was convicted by a jury on December 20, 2005. He was sentenced on March 29, 2006, to a term of 120 months imprisonment followed by a three-year term of supervised release. *See* [DE-45].

Philson's conviction and sentence were affirmed on appeal, *see United States v. Philson*, No. 06-4409 (4th Cir. April 3, 2007); [DE-52 through DE-54], and the United States Supreme Court denied his petition for writ of certiorari, *see Philson v. United States*, ___ U.S. ___, 128 S. Ct. 215 (2007). Philson filed this timely § 2255 motion on September 24, 2008.

The Government's evidence at trial tended to show that agents of the United States Marshal's Service had cause to believe that a fugitive wanted for murder was hiding in a residence occupied by Philson. Philson gave consent to search his house for the fugitive. While the officers searched the house, Philson and Deputy U.S. Marshal Lindsey sat in the family room during which time Philson revealed that he had spent more than a year in jail, leading Deputy Lindsey to conclude that Philson was a convicted felon. During the search of the house for the fugitive, an officer found 9 mm ammunition inside a closet in Philson's bedroom. Shortly thereafter, the fugitive was located in the garage. Using a key from Philson's pocket, the officers opened the locked trunk of a disabled vehicle in the garage and found four firearms, including a sawed-off shotgun. The serial numbers of all but one of those firearms had been obliterated.

Armed with the belief that Philson was a convicted felon and knowing that ammunition had been found in his bedroom closet, Deputy Lindsey informed Philson that the fugitive was

2

Case 4:05-cr-00067-F   Document 78   Filed 07/14/10   Page 2 of 11

wanted for murder and that the murder weapon had not been recovered.[1] Philson advised that there were no firearms in the house, and he consented to a further search of his house for firearms. That search produced a Lorcin handgun between the mattress and boxspring on Philson's bed. Philson then was arrested for possession of a firearm by a convicted felon.

Following a hearing, the undersigned allowed in part Philson's Motion to Suppress [DE-15] the firearms located during the search of his home. Evidence of all the firearms discovered in the trunk of the vehicle in the garage was suppressed. Only the firearm found under Philson's mattress was mentioned at trial, and the Indictment was redacted to delete Counts Two and Three, as well as all reference to the other firearms. The jury convicted Philson of Count One.

## PHILSON'S § 2255 ALLEGATIONS

Philson raised eleven claims in his § 2255 petition. All except Claims Ten and Eleven are grounded on allegations of ineffective assistance of trial counsel, and as to those, he suggests they were not raised on appeal because his appellate counsel also was ineffective.

Philson's most persistent complaint arises from this court's oversight in its suppression order of one of the firearms found in the trunk of the car in his garage. The order obviously intended to include each of those weapons as subject to suppression, but inexplicably failed to list the Romarm 7.62 x 39 mm semiautomatic rifle. Philson contends that omission in the order of reference to the Romarm rifle resulted in its not being suppressed. He argues that his counsel was ineffective for failing to cause the court to dismiss the Indictment or direct the United States Attorney to return to the grand jury for a superseding indictment. He complains that his lawyer advised him not to worry about omission of the Romarm rifle from the suppression order, as it was "one less firearm to worry about."

---

[1] Philson now contends that, in fact, the murder weapon already *had* been located and the caliber of weapon determined.

Philson's suggestion that the Government was required to return to the grand jury and seek a superseding indictment following entry of the suppression order is meritless. Philson has not directed the court's attention to any authority for his position, and the court is aware of none.

However, Philson is correct that the suppression order inadvertently omitted reference to the Romarm rifle, but the context of that order leaves no doubt that the court's intent was to suppress evidence of all the firearms located in the trunk of the vehicle inside Philson's garage. More importantly, no mention was made during trial of any firearm other than the .380 Lorcin located between the mattress and boxspring in Philson's bedroom. Omission from the suppression order of reference to the Romarm rifle due to a clerical oversight in no way prejudiced Philson. The jury never heard mention of that rifle or any other firearm except the .44 ammunition in Philson's bedroom closet and the Lorcin under the mattress. The Indictment was redacted before it was sent back to the jury room for use during deliberations. Although the suppression order inadvertently failed to list the Romarm semiautomatic rifle among those firearms suppressed, the intent of the court to suppress all the weapons found in the trunk of the car, in fact, was achieved at trial, and Philson suffered no prejudice whatsoever as a result of the oversight.

In his second claim, Philson contends that his statutory right to a speedy trial was violated under 18 U.S.C. § 3161(c)(1) because 89 non-excludable days passed before his trial commenced. *See United States v. Carey*, 746 F.2d 228, 229, n.1 (4th Cir. 1984) (quoting 18 U.S.C. § 3161(c)(1)). Philson engages in a detailed speedy trial calculation to demonstrate the basis for his claim. He argues that his trial counsel rendered ineffective assistance in failing to move to dismiss the indictment before trial on speedy trial grounds, as such motion would have resulted in a mandatory dismissal pursuant to § 3162(a)(2) ("failure of the defendant to move

4

for dismissal prior to trial . . . shall constitute a waiver of the right to dismissal under this section").

In *White v. United States*, 273 Fed. Appx. 559 (7th Cir. 2008), the § 2255 petitioner also raised an ineffective assistance of counsel claim alleging failure to move for dismissal of the indictment for violation of the Speedy Trial Act. Despite the district court's orders directing it to do so, the Government never addressed the speedy trial allegations, opining only that White's lawyer probably had strategic reasons for not moving for dismissal and declaring that White had not been prejudiced, in any event. The appellate court re-calculated the speedy trial computation, and determined that White's math was incorrect, thus not reaching the district court's determination that White had not been prejudiced by his trial lawyer's failure to move to dismiss the indictment.

Here, Philson correctly points out that the Government here also has neglected to address his speedy trial claim, offering only trial counsel's affidavit in which counsel stated that he had needed the extra time to prepare for trial. *See* Affidavit of Joseph B. Gilbert, Exhibit 3 to [DE-61], p. 1 ("I did not move to dismiss or request a speedy trial, because I needed the time to prepare for his jury trial. The slight delay benefitted Mr. Philson, in my view"). Presumably, the Government's position, had it chosen to take one, would be that failure to raise the speedy trial issue was a strategic decision by Philson's trial counsel.[2]

Philson has filed motions seeking a "more definite statement" from the Government concerning its position on his speedy trial claim and the authority therefor. The court denied his first, comprehensive, request [DE- 65], and has not yet ruled on the second request [DE-69] in which Philson limits his request for a more definite statement to only his speedy trial claim and to his claim, discussed below, that a witness offered perjured testimony at trial.

---

[2] Even if dismissal had been appropriate speedy trial grounds, the court could have ordered the dismissal to be without prejudice, enabling the Government to re-indict Philson.

5

Philson did not raise his speedy trial allegations at or before trial or on appeal. By styling the claim in terms of an ineffective assistance of counsel claim, Philson is attempting to circumvent the appellate process by raising it for the first time in the § 2255 motion.

> The record, thus, shows that there was no violation of the Speedy Trial Act and that Petitioner has clearly tried to bring through the "ineffective assistance of counsel" back door a meritless argument that, if anything, he should have raised on appeal instead. Counsel cannot be deemed ineffective for failing to raise a meritless claim. *Werts v. Vaughn*, 228 F.3d 178 (3d Cir. 2000). As Petitioner has not met the *Strickland* standard of ineffective assistance of counsel for the previously stated reasons, his claim of ineffective assistance of counsel based on a Speedy Trial Act violation is hereby DENIED.

*Cruz-Pagan v. United States*, No. 06-2006CCC, Cr. 01-0613CCC, 2009 WL 890478, slip op. at *3 (D. P.R. 2009).

Moreover, the Clerk's speedy trial computations[3] reveal that Philson's Indictment was filed and the 70-day clock began running on July 27, 2005. The speedy trial clock stopped when Philson's jury was selected on December 14, 2005. During that period, 140 days were excluded, some of which overlapped. The 70-day speedy trial clock was met on day 48, leaving 22 days to spare. Philson's calculation fails to take into account a number of excludable days. Philson received a speedy trial, and his claim that his lawyer rendered ineffective assistance in that regard is meritless.

Next, Philson contends that his right to effective assistance of counsel was violated because his trial lawyer failed to file a motion to dismiss the Indictment on grounds of prosecutorial misconduct before the grand jury. First even assuming counsel were privy to the content of the grand jury proceedings prior to commencement of the trial, Philson's theory is substantively flawed. His contention is that the prosecutor's failure to answer a grand juror's inquiry -- "there's a felon or a homicide suspect inside, how do we know that these weapons –

---

[3] In this district, criminal speedy trial computations are performed by computer program as overseen by the Deputy Clerk of Court assigned to the case.

6

Mr. Philson's weapons [sic]" – constituted misconduct. He contends had the jurors known that the homicide suspect had confessed that "the firearms were his," the grand jury might not have returned a true bill. He points out that, at trial, when asked if the fugitive told him he "threw the gun under the bed," Deputy Lindsey testified that the fugitive admitted that "he tossed the weapon as he was running through the house to the garage." Philson believes that if the grand jury had known what the fugitive said to Deputy Lindsey about tossing a gun while running through the house, the grand jury might not have indicted him. That is, Philson suggests that the Government was obliged to disclose potentially exculpatory evidence to the grand jurors.

First, the Government is not obliged to disclose exculpatory evidence to a grand jury. *See United States v. Williams*, 504 U.S. 36 (1992). Second, regardless of what the fugitive said about tossing guns, the physical evidence demonstrated that the Lorcin handgun was discovered *between* the mattress and the boxspring of Philson's bed – nor under or near it. Third, ownership of a firearm is irrelevant to whether or not a convicted felon "possessed" it in violation of 18 U.S.C. § 922(g).

Philson's constitutional challenges to 18 U.S.C. § 922(g) also are meritless. First, he contends that § 922(g)(1) is facially invalid because it represents a constructive amendment to the Constitution in violation of Article V thereof. Second, he contends that pursuant to *District of Columbia v. Heller*, ___ U.S. ___, 128 S. Ct. 2783 (2008), he is "actually innocent."

Most, if not all, courts that considered a Second Amendment challenge to 18 U.S.C. § 922(g), pre-*Heller*, upheld the statute as constitutional. *See, e.g., United States v. Lacy*, No. 09-CR-135, 2009 WL 375698, slip op. at *1 (E.D. Wis. Nov. 6, 2009). Post-*Heller*, courts have been consistent in rejecting Second Amendment challenges to § 922(g). *See id.* (collecting cases); *see also United States v. Brunson*, 292 Fed. Appx. 259, 261 (4th Cir. Sept. 11, 2008) (rejecting Second Amendment challenge to § 922(g) on both Commerce Clause and Second Amendment grounds).

7

*Heller* does not support Philson's position, as it does not deal with violations of § 922(g). *See United States v. Nichols*, 359 Fed. Appx. 433, 435 (4th Cir. Jan. 4, 2010). Rather, in *Heller*, the Court reaffirmed that, "[a]lthough we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by *felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *Heller*, 128 S. Ct. at 2816-17 (emphasis added).

Philson also contends that his lawyer rendered ineffective assistance when he failed to seek dismissal of the Indictment on grounds that the prosecutor presented "perjured" testimony during the suppression hearing in the district court. Philson's argument is difficult to follow, but it appears that he contends he was eligible to have the Indictment dismissed after officers' testimony at the suppression hearing and/or trial reveals that they falsely advised him they had not recovered the murder weapon and did not know what caliber ammunition had been used. Philson complains that, in fact, the officers knew that the ammunition used in the murder had been .38 or .357 caliber, but when they saw the 9mm ammunition in plain view in his closet during the fugitive search, the officers tricked him into giving his consent for a second search for firearms by misrepresenting to him that the murder weapon had *not* yet been found. Therefore, Philson concludes, "[b]ecause the agent lied, Movant's second consent must be suppressed." Philson's § 2255 Motion [DE-55/57], p. 16. He relies on *Bumper v. North Carolina*, 391 U.S. 543 (1968), for the proposition that, "Where prosecutor seeks to rely upon consent to justify lawfulness of search, he has the burden of proving that consent was, in fact, freely and voluntarily given, and his burden would not be discharged by showing no more than acquiescence to claim of lawful authority." Philson's § 2255 motion [DE-55/57], at 16.

Philson's complaint is not that the Government presented perjured testimony at the suppression hearing or at trial, but that the law enforcement officers lied *to him* during the

8

fugitive search in order to obtain his consent to conduct a more thorough search of his residence for weapons after observing the ammunition and deducing that Philson had a previous felony conviction. These allegations do not entitle Philson to relief for at least two reasons.

First, the gravamen of this argument really is that trial counsel was ineffective for failing to raise in his motion to suppress the allegation that Philson's consent to the second search was involuntary. That argument would not, however, have been successful, because first, the officers' finding the ammunition in the closet of a convicted felon, at the very least, would have supplied probable cause for a more thorough search for a firearm. *See United States v. Campos*, No. 85-5583, 1987 WL 37180 (4th Cir. 1987) (citing *Kendrick v. Nelson*, 448 F.2d 25, 27 (9th Cir. 1971)). Before the warrant search began Philson told the officers that there were no firearms or other persons on the premises. Finding ammunition in his closet and the fugitive in his garage, therefore, reasonably would have raised the officers' suspicion and concern for officer safety.

Second, as noted above, even if the search were found to have been in violation of Philson's Fourth Amendment rights and the gun under the mattress suppressed, the Government still could have prosecuted him for "possessing" the ammunition discovered in plain view during the search pursuant to a warrant. It is illegal for a felon to possess ammunition pursuant to 18 U.S.C. § 922(g) (unlawful for felon to possess "in or affecting commerce, any firearm *or ammunition* . . . ."). , so it was unnecessary for prosecution under § 922(g) that the officers find a gun. Whether or not the ammunition matched either the murder weapon or the weapon under the mattress is irrelevant to this prosecution; possession by a felon of the ammunition, alone, is illegal.

For all these reasons, Philson cannot meet the second prong of the two-part test for proving ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984),

9

Case 4:05-cr-00067-F   Document 78   Filed 07/14/10   Page 9 of 11

requires that a petitioner establish that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," *id.* at 688, and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687. A defendant's right to effective assistance of counsel is constitutionally protected, not for its own sake, but because of the impact it has on his ability to receive a fair trial, *United States v. Cronic*, 466 U.S. 648, 658 (1984). Absent some impact of counsel's supposedly deficient conduct on the reliability of the trial, the Sixth Amendment guarantee generally not implicated. *See id.* at 658. Rather, the defendant must demonstrate that his attorney's alleged errors "actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693. *See also Smith v. Robbins*, 528 U.S. 259, 286 (2000) (applying actual prejudice requirement where counsel followed all required procedures and was alleged to have missed a particular nonfrivolous argument); *Strickland*, 466 U.S. at 699-700 (rejecting claim, partly because the evidence counsel did not introduce at trial probably would not have altered defendant's sentence). In short, even if Philson could demonstrate that his trial counsel had been ineffective, he could not show that he suffered "prejudice" of a Constitutional magnitude so as to be entitled to § 2255 relief.

The court has carefully reviewed Philson's remaining claims, the Government's motion seeking their dismissal, Philson's "Traverse" and his "Surrebuttal" opposing dismissal. The court finds that none of the claims has merit. Accordingly, it hereby is ORDERED that the Government's Motion to Dismiss [DE-61] is ALLOWED, and Philson's § 2255 motion [DE-55/57] hereby is DISMISSED. Philson's Motion for a More Definite Statement [DE-69] is DENIED as MOOT. As the court perceives no basis therefor, a Certificate of Appealability is DENIED.

10

SO ORDERED.

This, the ___13th___ day of July, 2010.

                                                    *James C. Fox*
                                                  JAMES C. FOX
                                                  Senior United States District Judge

11

Case 4:05-cr-00067-F   Document 78   Filed 07/14/10   Page 11 of 11